1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   DARLA TERRY-KAMMENZIND,

8              Plaintiff,                      NO: 1:14-CV-3191-RMP

         v.
9                                             ORDER GRANTING PLAINTIFF'S
                                              MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                 JUDGMENT AND REMANDING
    Commissioner of the Social Security       FOR AWARD OF BENEFITS
    Administration,
11
               Defendant.
12

13          BEFORE THE COURT are Plaintiff Darla Terry-Kammenzind's Motion for

14   Summary Judgment, **ECF No. 13**, and Defendant Carolyn W. Colvin's Motion for

15   Summary Judgment, **ECF No. 15**. The Court has reviewed the motions and

16   administrative record, and is fully informed.

17                              **BACKGROUND**

18          Darla Terry-Kammenzind (hereinafter referred to as "Ms. Terry")

19   protectively filed an application for Supplemental Security Income (SSI) on

20   January 1, 2011, alleging disability beginning December 1, 2010. Tr. 19. Ms. Terry

21   requested a hearing, which was held via live-video before Administrative Law

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 1

1  Judge ("ALJ") Tom Morris on September 12, 2012. Tr. 19. Ms. Terry was present

2  and represented by counsel D. James Tree. *Id.* The ALJ heard testimony from

3  vocational expert ("VE") Trevor Duncan. *Id.* A supplemental video hearing was

4  held on April 26, 2013, again in front of ALJ Morris and with testimony from VE

5  Duncan. *Id.*

6       The ALJ found that Ms. Terry had not engaged in substantial gainful work,

7  as defined in 20 C.F.R. § 416.920(b), since December 10, 2010. Tr. 21. Further,

8  the ALJ found that Ms. Terry had the following severe impairments as defined by

9  20 C.F.R. § 416.920(c): post-traumatic stress disorder, major depressive disorder,

10  osteoarthritis of the cervical spine, right knee internal derangement, neurogenic

11  bladder, and asthma. *Id.*

12       However, the ALJ found that Ms. Terry did not have an impairment or

13  combination of impairments that met or medically equaled the severity of one of

14  the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

15  §§ 416.920(d), 416.925, and 416.926). Tr. 23. The ALJ further found that

16  Ms. Terry had the residual functional capacity to lift and/or carry fifty pounds

17  occasionally and twenty pounds frequently; could stand and/or walk for a total of

18  two hours in an eight-hour workday with normal breaks; could sit for a total of six

19  hours in an eight-hour workday with normal breaks; could occasionally kneel,

20  crouch, crawl, and climb ramps and stairs; should not stoop for longer than two

21  minutes; should never climb ladders or scaffolds; could tolerate occasional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 2

1  exposure to dust, odors, fumes, and pulmonary irritants; could perform simple,

2  routine work with customary breaks and lunch; could have occasional contact with

3  supervisors; could have occasional contact with coworkers; should have no contact

4  with the public for work tasks; could tolerate low stress; should engage in work

5  that requires no more than the occasional use of independent judgment; and should

6  not engage in any work task that takes her more than three to five minutes from a

7  restroom. Tr. 24–5.

8      Given Ms. Terry's age, education, work experience, and residual functional

9  capacity, the VE testified that there were a number of jobs available in the national

10 economy for an individual sharing her characteristics. Tr. 32. The ALJ then found

11 that "the claimant is capable of making a successful adjustment to other work that

12 exists in significant numbers in the national economy." Tr. 33. The ALJ concluded

13 that Ms. Terry was not under a disability as defined by the Social Security Act. *Id.*

14 Ms. Terry's application was denied on May 20, 2013. Tr. 16.

15     Ms. Terry filed a request for review by the Appeals Council, which was

16 denied on October 10, 2014. Tr. 1. Ms. Terry then filed a complaint in the District

17 Court for the Eastern District of Washington on December 12, 2014, ECF No. 1,

18 and the Defendant answered the complaint on February 27, 2015. ECF No. 8. This

19 matter is therefore properly before the Court pursuant to 42 U.S.C. § 405(g).

20 Ms. Terry filed a motion for summary judgment on June 15, 2015. ECF No. 13.

21 The Commissioner filed a cross motion for summary judgment on July 27, 2015.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 3

ECF No 15. Ms. Terry filed a reply memorandum on August 10, 2015. ECF
No. 17.

## STATEMENT OF FACTS

The facts of this case are set forth in the administrative hearing transcripts
and record, ECF No. 9. Ms. Terry was 41 years old when she applied for SSI, 43
years old at the initial hearing, and 44 years old at the supplemental hearing. *See*
Tr. 19, 31. Ms. Terry has a high school education and has not worked since 1993
when she ceased working in order to be a stay-at-home parent. Tr. 21, 31.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's final decision. 42 U.S.C. § 405(g). A reviewing court must uphold
the Commissioner's decision, determined by an ALJ, when the decision is
supported by substantial evidence and not based on legal error. *See Jones v.
Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Substantial evidence is more than a
mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975). Substantial evidence "means such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The reviewing court should uphold "such inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*,
348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a

whole, not just the evidence supporting the Commissioner's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986) ("This court must consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion."). "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the reviewing court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal citation omitted). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

Under the Social Security Act (the "Act"),

an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 5

42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). "Thus, the definition of disability consists of both medical and vocational components." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the ALJ, under step two, determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. § 416.920(a)(4)(ii).

If the impairment is severe, the evaluation proceeds to step three, which compares the claimant's impairment to a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 6

1    App. 1. If the impairment meets or equals one of the listed impairments, the

2    claimant is conclusively presumed to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

3         Before proceeding to step four, the claimant's residual functional capacity is

4    assessed. 20 C.F.R. § 416.945(a). An individual's residual functional capacity is

5    the ability to do physical and mental work activities on a sustained basis despite

6    limitations from any impairments. *Id.*

7         If the impairment is not one conclusively presumed to be disabling, the

8    evaluation proceeds to step four, where the ALJ determines whether the

9    impairment prevents the claimant from performing work she has performed in the

10   past. If the claimant is able to perform her previous work, the claimant is not

11   disabled. 20 C.F.R. § 416.920(a)(4)(iv).

12        If the claimant cannot perform her previous work, the final step considers

13   whether the claimant is able to perform other work in the national economy in

14   view of her residual functional capacity, age, education, and past work experience.

15   20 C.F.R. § 416.920(a)(4)(v).

16        At step five, the initial burden of proof rests upon the claimant to establish a

17   prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d

18   920, 921 (9th Cir. 1971). The claimant satisfies this burden by establishing that a

19   physical or mental impairment prevents her from engaging in her previous

20   occupation. The burden then shifts to the Commissioner to show that (1) the

21   claimant can perform other substantial gainful activity, and (2) a "significant

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 7

number of jobs exist in the national economy" which the claimant can perform.

*Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ISSUES

Ms. Terry argues that the ALJ committed reversible error by (1) improperly determining that Ms. Terry was not credible; (2) improperly rejecting expert medical evidence from an examining physician; and (3) failing to support the finding that Ms. Terry's neurogenic bladder impairment would allow her to sustain gainful employment with substantial evidence.

### DISCUSSION

**I.    Credibility Determination**

Ms. Terry alleges that the ALJ found that she lacked credibility based on impermissible reasons including consideration of (1) inconsistent statements concerning her alcohol use; (2) inconsistent statements concerning her social life; (3) a lack of motivation to work as shown through past work history; (4) the receipt of public assistance and child support; and (5) the failure to seek mental health treatment. ECF No. 13 at 19–23; ECF No. 17 at 8–12. Additionally, Ms. Terry claims that the ALJ failed to apply the correct legal standard when assessing credibility. ECF No. 17 at 9–10.

**A. Specific Credibility Findings**

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 8

not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

If the ALJ finds that a claimant's statements are not credible, he need not reject the entirety of a claimant's symptom testimony. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *See id.* If the credibility findings are supported by substantial evidence in the record, the reviewing court may not second-guess the ALJ's determination. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ's failure to articulate specifically "clear and convincing" reasons for rejecting a claimant's subjective complaints is reversible error. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007).

In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in allegations of limitations or between statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity,

and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As discussed below, of the various errors alleged by Ms. Terry regarding credibility, this Court finds that the ALJ only erred in misinterpreting a treatment record to incorrectly note an inconsistent statement. The ALJ gave clear and convincing reasons supported by substantial evidence in the record for his overall credibility finding. As such, this Court finds that the ALJ's consideration of the misattributed inconsistent statement was harmless error. Based on the ALJ's stated reasoning and the record as a whole, the Court concludes that the ALJ did not commit reversible error in finding that "the claimant's statements concerning the intensity, persistence, and limiting effects . . . are not entirely credible." Tr. 26.

### 1.  Inconsistent Statements Concerning Alcohol Use

The ALJ noted a number of inconsistencies between Ms. Terry's testimony during the hearing and her prior medical records regarding her alcohol use. Tr. 29. Ms. Terry, while admitting her inconsistent reports, argues that "the ALJ found this impairment to be non-severe" so "this inconsistency has little relevancy." ECF No. 13 at 23.

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions . . . falls within [the ALJ's] responsibility." *Morgan*, 169 F.3d at 603. There is substantial evidence in the record that Ms. Terry made inconsistent

1  statements regarding her alcohol use. *See* Tr. 67, 458, 584. As the ALJ properly

2  supported his finding, this Court concludes that the ALJ did not err when

3  considering these inconsistencies in his overall credibility analysis.

4  **2.  Inconsistent Statements Concerning Social Life**

5  Ms. Terry argues that the ALJ committed reversible error when he

6  concluded that "the claimant has a more active social life than she has portrayed in

7  connection with this claim." ECF No. 13 at 22; Tr. 29. Ms. Terry claims that this

8  conclusion was based on the ALJ's misinterpretation of treatment notes to

9  erroneously find inconsistent statements. ECF No. 13 at 22.

10  The Court finds that there is substantial evidence to support the ALJ's

11  finding that Ms. Terry made inconsistent statements regarding friends. Ms. Terry

12  testified that she had no friends. Tr. 67, 70. However, medical records from

13  October 8, 2012 show that Ms. Terry reported having two friends in Yakima.

14  Tr. 585. Other medical records reference friends giving Ms. Terry rides to medical

15  appointments. Tr. 322, 337. Ms. Terry claims that these rides were from a

16  volunteer organization called People for People. ECF No. 17 at 9. Even if

17  Ms. Terry has proffered alternative reasonable explanations, it is not this Court's

18  role to second-guess the reasonable conclusions reached by the ALJ. *See Rollins v.*

19  *Massanri*, 261 F.3d 853, 857 (9th Cir. 2001) (noting that "the ALJ's interpretation

20  of [the claimant's] testimony may not be the only reasonable one. But it is still a

21  reasonable interpretation and is supported by substantial evidence; thus, it is not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 11

1   our role to second-guess it."). The Court finds that there is substantial evidence

2   supporting the ALJ's conclusion.

3         The Court finds that the ALJ erred in finding that Ms. Terry lived with her

4   fiancé on June 7, 2011. The ALJ based this finding on a treatment note that

5   included an outdated notation that Ms. Terry was living with her fiancé. Tr. 29,

6   465. As the report correctly notes in another paragraph, Ms. Terry was at the time

7   living in a women's shelter with her teenage daughter. Tr. 465.

8         While the Commissioner concedes that the ALJ erred in misinterpreting this

9   treatment note, she argues that it should be treated as harmless error given the

10  ALJ's other findings concerning Ms. Terry's inconsistent statements regarding her

11  social history. ECF No. 15 at 5. Contrary to Ms. Terry's assertion that this Court

12  must remand if it finds a single error in the ALJ's credibility analysis, ECF No. 17

13  at 8, "[s]o long as there remains 'substantial evidence supporting the ALJ's

14  conclusions on . . . credibility' and the error 'does not negate the validity of the

15  ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not

16  warrant reversal." *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1162

17  (9th Cir. 2008) (internal citations omitted). "[T]he relevant inquiry . . . is not

18  whether the ALJ would have made a different decision absent the error . . . [but] is

19  whether the ALJ's decision remains legally valid, despite such error." *Id.*

20        The ALJ based his conclusion that Ms. Terry had a more active social life

21  than she portrayed in her testimony on the inconsistent statements he noted

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 12

1   concerning her friends and living with her fiancé. Tr. 28–9. The ALJ's finding

2   concerning Ms. Terry's inconsistent statements regarding her social life was in turn

3   merely one part of the overall credibility analysis. Tr. 26–29. As discussed above,

4   there was substantial evidence to support the ALJ's conclusion that Ms. Terry

5   made inconsistent statements about having friends. As these specific findings

6   provide sufficient evidence for the ALJ's conclusion that Ms. Terry had a more

7   active social life than she portrayed in her testimony, there is substantial evidence

8   supporting this finding notwithstanding the error identified above. This Court finds

9   the ALJ's error in misattributing an inconsistent statement to Ms. Terry to be

10  harmless.

11      **3.  Lack of Motivation to Work**

12      Ms. Terry argues that the ALJ's analysis of her limited work history was

13  reversible error. ECF No. 13 at 20. The ALJ found that Ms. Terry "appears to have

14  little interest in working outside the home and her allegation of disability must be

15  viewed in this context." Tr. 29. The ALJ based this conclusion on the claimant's

16  earnings report which indicated she had "only worked six years in her entire life."

17  *Id.* Ms. Terry alleges that she did not work due to her physical and mental health

18  impairments, not out of a lack of motivation. ECF No. 13 at 20.

19      An ALJ is permitted to consider a claimant's work history when making a

20  credibility determination. *Light*, 119 F.3d at 792; *see also Thomas v. Barnhart*, 278

21  F.3d 947, 959 (9th Cir. 2002) (finding that the ALJ properly considered the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 13

1  claimant's "poor work history" and that she had "show little propensity to work in

2  her lifetime" in analyzing the claimant's credibility). Even if Ms. Terry has

3  proffered alternative reasonable explanations, it is not this Court's role to second-

4  guess the reasonable conclusions reached by the ALJ. *See Rollins*, 261 F.3d at 857.

5  As such, this Court finds that the ALJ did not err when considering Ms. Terry's

6  limited work history as demonstrating a lack of motivation to work.

7  **4.  Receipt of Public Assistance and Child Support**

8  Ms. Terry argues that the ALJ's consideration of her receipt of public

9  assistance and child support was improper and reversible error. ECF No. 13 at 20.

10  In his decision, the ALJ found that "[t]he assistance the claimant receives in the

11  form of child support payments, food stamps, and free housing provides a

12  disincentive for her to return to work." Tr. 29.

13  Some courts have questioned the consideration of government assistance and

14  other benefits as part of a credibility analysis. *See Goldthrite v. Astrue*, 535 F.

15  Supp. 2d 329, 338 (W.D.N.Y. 2008) ("The fact the Plaintiff was receiving other

16  income from public assistance does not, by itself, mean that she is less credible

17  when testifying about her pain."); *Aguiar v. Apfel*, 99 F. Supp. 2d 130, 138 (D.

18  Mass. 2000) ("Claimant's motivation cannot automatically be questioned merely

19  because she has availed herself of whatever public assistance that the state or

20  federal government provides."); *see also Caldwell v. Sullivan*, 736 F. Supp. 1076,

21  1081 (D. Kan. 1990) ("An ALJ is required to be fair and impartial, not prejudiced

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 14

1    against a claimant because of the claimant's financial status."). However, this view

2    is not universal. *See Duc Van Nguyen v. Shalala*, No. C 93-2448-SC, 1994 WL

3    362263, at *5 (N.D. Cal. Feb. 1, 1994) ("Here, the ALJ simply considered

4    plaintiff's 'obvious disincentive' to work in light of his AFDC benefits and income

5    as one factor bearing plaintiff's credibility.").

6    The ALJ discussed public assistance as one of several factors in his analysis that

7    demonstrated a lack of motivation to work. In this instance, the Court finds that the

8    ALJ did not commit reversible error when considering Ms. Terry's receipt of

9    public assistance and child support.

10               **5.  Failure to Seek Mental Health Treatment**

11        Ms. Terry argues that the ALJ's consideration of her failure to seek mental

12   health treatment is reversible error. ECF No. 13 at 21. The ALJ noted that,

13   although Ms. Terry testified that "her reluctance to leave her residence made it

14   more difficult for her to access mental health treatment," "[t]he claimant has a

15   large medical record [demonstrating that] she clearly had little difficulty seeking

16   medical attention for her other complaints." Tr. 28.

17        Courts have found that the failure to seek mental health treatment should not

18   be counted against a mentally ill claimant. *See Regennitter v. Comm'r of Social*

19   *Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) ("Indeed, we have

20   particularly criticized the use of a lack of treatment to reject mental complaints

21   both because mental illness is notoriously underreported and because 'it is a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 15

1    questionable practice to chastise one with a mental impairment for the exercise of

2    poor judgment in seeking rehabilitation.'") (internal citation omitted); *see also*

3    *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (noting that "federal courts

4    have recognized a mentally ill person's noncompliance with psychiatric

5    medications can be, and usually is, the 'result of [the] mental impairment [itself]

6    and, therefore, neither willful nor without a justifiable excuse'") (internal citation

7    omitted).

8         The Court finds, in this instance, that there is substantial evidence to support

9    the ALJ's conclusion that Ms. Terry's failure to seek mental health treatment

10   negatively affects her credibility. The ALJ based this finding entirely on

11   Ms. Terry's extensive medical record, which demonstrates that she was able to

12   attend numerous medical appointments concerning her other ailments. Tr. 28. It is

13   not unreasonable to conclude that a claimant who can attend one medical

14   appointment has the capability to schedule and attend others that she believes

15   necessary. As such, the ALJ did not err when considering Ms. Terry's failure to

16   seek mental health treatment.

17        **B. Legal Standard for Credibility Analysis**

18        In her reply brief, Ms. Terry adds an allegation that the ALJ used the

19   incorrect legal standard when analyzing her credibility. ECF No. 17 at 9–10. This

20   claim is apparently based on a footnote in the Commissioner's brief which states

21   that "[i]t is the Commissioner's position that 'clear and convincing reasons' is not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 16

1   the proper standard, here or elsewhere, because it is contrary to the 'substantial

2   evidence' standard articulated in 42 U.S.C. § 405(g)." ECF No. 15 at 3 n.1.

3   Ms. Terry argues that this statement equates to a policy of misapplying the law,

4   which the ALJ can be assumed to have adhered to when assessing credibility. ECF

5   No. 17 at 9–10.

6          This Court finds no evidence in the record that the ALJ did not follow the

7   "clear and convincing reasons" standard when assessing credibility. Ms. Terry fails

8   to point to any specific section of the ALJ's decision, instead arguing generally

9   that "[w]here agency policy differs from the law as established by the courts . . . it

10  must be assumed that an ALJ made his decision according to agency policy." *Id.* at

11  10. Given the lack of factual evidence and legal support provided for Ms. Terry's

12  argument, this Court will not find error based on mere conjecture. As such, the

13  Court finds that the ALJ used the correct legal standard when assessing

14  Ms. Terry's credibility.

15  **II.    Rejecting Medical Opinion Evidence**

16         Ms. Terry argues that the ALJ improperly rejected the opinion of her

17  examining physician, Dr. Jenifer Schultz, Ph.D. ECF No. 13 at 8. Ms. Terry claims

18  that the ALJ (1) used the incorrect legal standard in determining the extent to

19  which Dr. Schultz's opinion was based on self-reports and (2) failed to support his

20  conclusions regarding Dr. Schultz's opinion with clear and convincing reasons. *Id.*

21  at 8–12.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 17

1    The ALJ assigned little weight to Dr. Schultz's opinion regarding

2  Ms. Terry's social limitations and ability to tolerate stress as her opinion was

3  primarily based on the claimant's "less than fully credible self-report." Tr. 31. To

4  further support this conclusion, the ALJ noted "numerous documented instances

5  where the claimant presented with normal mood and affect." *Id.* The ALJ also

6  concluded that, as Ms. Terry inaccurately informed Dr. Schultz that she had been

7  clean and sober for the prior six years, Ms. Terry had not been entirely truthful

8  during the evaluation. *Id.* Overall, the ALJ found that "the degree of

9  symptomatology [Ms. Terry] described at the evaluation with Dr. Schultz is not

10  supported by the treatment records." *Id.*

11  **A. Legal Standard to Determine if Opinion was Based on Self-Reports**

12    Ms. Terry argues that the ALJ committed reversible error by using the

13  incorrect legal standard when determining that Dr. Schultz based her opinion on

14  Ms. Terry's self-reports. ECF No. 13 at 10 n.5. "If a treating provider's opinions

15  are based 'to a large extent' on an applicant's self-reports and not on clinical

16  evidence, and the ALJ finds the applicant not credible, the ALJ may discount the

17  treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.

18  2014). Ms. Terry argues that as the ALJ stated that Dr. Schultz's opinion was

19  merely "based on self-reports," the ALJ improperly rejected her opinion. ECF

20  No. 13 at 10 n.5.

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 18

1    Contrary to Ms. Terry's position, the ALJ found that Dr. Schultz's opinion

2    was "*primarily* based on the claimant's less than fully credible self-report." Tr. 31

3    (emphasis added). In this context, "largely" and "primarily" are interchangeable.

4    As such, the Court finds that the ALJ applied the correct legal standard when

5    analyzing Dr. Schultz's opinion.

6    **B. Clear and Convincing Reasons to Discount Dr. Schultz's Opinion**

7    Ms. Terry argues that the ALJ improperly rejected Dr. Schultz's medical

8    opinion. ECF No. 13 at 8–12. She alleges that the ALJ impermissibly found her

9    self-reports to be not entirely credible and failed to consider evidence in the

10   medical records that supported Dr. Schultz's conclusions. *Id.*

11   "[T]he Commissioner must provide 'clear and convincing' reasons for

12   rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*,

13   81 F.3d 821, 830 (9th Cir. 1995). "[T]he opinion of an examining doctor . . . can

14   only be rejected for specific and legitimate reasons that are supported by

15   substantial evidence in the record." *Id.* at 830–31. "[I]t is incumbent on the ALJ to

16   provide detailed, reasoned, and legitimate rationales for disregarding the

17   physicians' findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

18   Concerning medical opinion evidence, "[t]he ALJ is responsible for

19   resolving conflicts in medical testimony, and resolving ambiguity. Determining

20   whether inconsistencies are material (or are in fact inconsistencies at all) and

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 19

1   whether certain factors are relevant to discount the opinions . . . falls within this

2   responsibility." *Morgan*, 169 F.3d at 603.

3          The ALJ assigned less weight to Dr. Schultz's opinion concerning

4   Ms. Terry's social limitations and ability to handle stress based on: (1) the fact that

5   Dr. Schultz's opinion was primarily based on Ms. Terry's less than fully credible

6   self-report and (2) inconsistencies with treatment records which report Ms. Terry

7   presenting with normal mood and affect. Tr. 31.

8          There is substantial evidence in the record that Dr. Schultz largely based her

9   opinion on self-reports. Even a cursory glance at Dr. Schultz's opinion provides

10  support for the ALJ's conclusion that the doctor primarily relied on self-reports.

11  Nearly every sentence begins with some variation of "Ms. Terry reported" or

12  "[s]he stated." Tr. 583–586.

13         Ms. Terry presents her case as akin to one where the medical expert's

14  opinion was based on both self-reports and clinical observations. ECF No. 13 at

15  10. "[W]hen an opinion is not more heavily based on a patient's self-reports than

16  on clinical observations, there is no evidentiary basis for rejecting the opinion."

17  *Ghanim*, 763 F.3d at 1162; *see also Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194,

18  1200 (9th Cir. 2008) (finding that substantial evidence did not support the ALJ's

19  conclusion that the medical expert relied on self-reports more heavily than on his

20  own clinical observations). The instant case is distinguishable, however, as the

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 20

1   ALJ specifically noted which portions of the record supported his finding that

2   Dr. Schultz primarily relied on Ms. Terry's self-reports. *See* Tr. 31.

3         Ms. Terry contends that psychiatric impairments often must be evaluated

4   based solely on a patient's self-reports. ECF No. 13 at 10; ECF No. 17 at 3. As

5   support, Ms. Terry notes that "[n]o laboratory tests or physical examinations exist,

6   or are even known to be possible, to diagnose some psychological disorders. And

7   the practice of psychologists often consists entirely of professional assessment of

8   patient-reported symptoms and experiences." *Vanieken-Ryals v. Office of Pers.*

9   *Mgmt.*, 508 F.3d 1034, 1042 (Fed. Cir. 2007).

10        This Court recognizes that the diagnosis of many social and psychological

11  limitations will depend on a physician's analysis of a patient's self-reported

12  symptoms. A medical opinion is not however automatically discarded simply

13  because it is based on a patient's self-reports. As discussed above, "[i]f a treating

14  provider's opinions are based 'to a large extent' on an applicant's self-reports and

15  not on clinical evidence, *and the ALJ finds the applicant not credible*, the ALJ may

16  discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (emphasis

17  added).

18        In making a determination to reject a medical opinion based on self-reports,

19  the ALJ must take into account the claimant's credibility. *See id.* Here, the ALJ

20  first found that Dr. Schultz's opinion was primarily based on self-reports. Tr. 31.

21  The ALJ then rejected Dr. Schultz's opinion based on his finding that, as Ms. Terry

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 21

1  was not entirely credible, her self-report to Dr. Schultz was likely not entirely

2  credible either. *Id.* The ALJ provided further support for his conclusion by noting

3  that Ms. Terry was not candid with Dr. Schultz concerning her alcohol use. *Id.* As

4  such, the ALJ did not err when discounting Dr. Schultz's opinion on the basis of

5  Ms. Terry's credibility.

6        Ms. Terry further argues that the ALJ, while citing portions of the treatment

7  notes that describe her as having a normal mood and affect, ignored other entries

8  which indicated she suffered from anxiety. ECF No. 13 at 11–12. To the contrary,

9  the ALJ merely noted inconsistencies in the record where Ms. Terry presented

10  "without signs of depression or anxiety." Tr. 28. The ALJ also included social

11  limitations as part of Ms. Terry's residual functional capacity. Tr. 25. Further,

12  Ms. Terry argues that the ALJ reviewed the same medical records as Dr. Schultz

13  and impermissibly substituted his lay opinion for her expert one. ECF No. 13 at 11.

14  However, it is the ALJ's responsibility to evaluate any inconsistencies in the record

15  and weigh the evidence accordingly. *See Morgan*, 169 F.3d at 603.

16        Ms. Terry argues that the ALJ reached his conclusion by ignoring the

17  opinions of the other medical experts, Drs. Mark Gonsky and Molly McNab. ECF

18  No. 13 at 8. However, the ALJ previously had presented clear and convincing

19  reasons for rejecting both Dr. Gonsky's and Dr. McNab's conclusions regarding

20  Ms. Terry's mental health. The ALJ assigned little weight to Dr. Gonsky's opinion

21  as he "did not cite any objective signs or findings in support of the functional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 22

1    limitations he opined." Tr. 29. Further, the ALJ noted that Dr. Gonsky's treatment

2    note indicated that his opinion was, as with Dr. Schultz's, primarily based on

3    Ms. Terry's self-reports. *Id.* The ALJ assigned little weight to Dr. McNab's

4    opinion regarding Ms. Terry's psychiatric complaints as the doctor wrote that she

5    would defer to a psychiatrist's opinion on the matter. Tr. 29–30.

6        As such, this Court finds that the ALJ did not commit reversible error when

7    discounting Dr. Schultz's medical opinion regarding Ms. Terry's mental health.

8    The ALJ provided the requisite clear and convincing reasons supported by

9    substantial evidence in the record for rejecting the portions of the opinion

10   concerning Ms. Terry's social limitations and ability to handle stress.

11   **III.    Analysis of Neurogenic Bladder Impairment**

12       Ms. Terry argues that the ALJ failed to support his conclusion that her

13   neurogenic bladder would not prevent her from working provided she was not

14   more than three to five minutes walking distance from a restroom. ECF No. 13 at

15   13. Specifically, she contends that the neurogenic bladder-related hypothetical the

16   ALJ posed to the VE failed to include relevant limitations specific to her condition.

17   *Id.*

18       The ALJ found that "[t]he medical records do not support a finding that the

19   neurogenic bladder and self-catheterization would prevent the claimant from

20   working provided she was not more than three to five minutes walking distance

21   from a restroom." Tr. 26. The ALJ supported this finding by discounting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 23

1    Ms. Terry's assertion that she must self-catheterize every time she goes to the

2    bathroom based on prior treatment notes. *Id.* The ALJ also found that Ms. Terry

3    had only seen an urologist a number of times during the relevant period,

4    "render[ing] her allegations regarding her bladder issues less persuasive." *Id.*

5    While acknowledging that the medical records show that Ms. Terry had multiple

6    urinary tract infections, the ALJ found that "the treatment records do not show that

7    her related symptoms are as bad as she has alleged." *Id.* Specifically, the ALJ

8    noted that her December 22, 2011, report of pain related to her urinary tract

9    infection did not match the effect noted by her physician. *Id.*

10       In step five of the sequential process, an ALJ may pose hypothetical

11   questions to a VE in order to determine whether employment opportunities exist in

12   significant numbers in the national economy, given the claimant's residual

13   functional capacity, age, education, and work experience. Tr. 21. "[A] hypothetical

14   question should 'set out all of the claimant's impairments.'" *Gallant v. Heckler*,

15   753 F.2d 1450, 1456 (9th Cir. 1984) (internal citation omitted). "Unless the record

16   indicates that the ALJ had specific and legitimate reasons for disbelieving a

17   claimant's testimony as to subjective limitations such as pain, those limitations

18   must be included in the hypothetical in order for the vocational expert's testimony

19   to have any evidentiary value." *Embrey*, 849 F.2d at 423. "If the assumptions in the

20   hypothetical are not supported by the record, the opinion of the vocational expert

21   that claimant has residual working capacity has no evidentiary value." *Gallant*, 753

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 24

1   F.2d at 1456. Hypotheticals posed to a VE "must be upheld as long as they are

2   supported by substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 774 (9th

3   Cir. 1986). An ALJ is not required to accept limitations posed by a claimant's

4   counsel more restrictive that those suggested by the ALJ. *Id.*

5      During the hearing, the ALJ posed one question to the VE that specifically

6   referenced Ms. Terry's neurogenic bladder. Tr. 93. Following a series of questions

7   about Ms. Terry's other physical impairments, the ALJ added the limitation that

8   "[w]ork tasks should not take the individual away more than three to five minutes

9   from a restroom." Tr. 91–3. The VE answered that all the employment

10  opportunities he had previously identified would provide close or approximate

11  access to a restroom. Tr. 95.

12     There is no substantial evidence in the record to support the limitation posed

13  by the ALJ. No medical expert opined about the necessary of being in close

14  proximity to a restroom. Dr. McNab, the only opining physician to comment

15  specifically about Ms. Terry's neurogenic bladder, wrote that Ms. Terry's

16  condition would deteriorate "<u>only</u> if she can't self-catheterize with regularity"

17  while working. Tr. 366 (emphasis in original).

18     Ms. Terry, as opposed to discussing the need to be proximate to a restroom,

19  testified at length about the frequency of urination and the time-consuming process

20  of self-catheterizing in a public restroom. Ms. Terry claimed that she self-

21  catheterized "[e]very time I go to the bathroom." Tr. 51. She continued by stating

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 25

1    that she went to the bathroom "[s]ix to eight times a day," *id.*, and "[t]en to 12"

2    when she had a urinary tract infection. Tr. 52. Ms. Terry stated that she had a

3    urinary tract infection around four of every six weeks. *Id.* Ms. Terry testified that it

4    takes her from ten to twelve minutes to go through the self-catheterization process

5    in a public restroom. Tr. 83. When Ms. Terry's counsel asked the VE how being

6    away from the workstation for twelve to fifteen minutes several times per day

7    would impact a person's ability to sustain a job, the VE responded that such a

8    person "would have a difficult time sustaining ongoing gainful employment" if

9    absent beyond the provided break periods. Tr. 96. The VE specifically noted that

10    "[m]ost employers would not tolerate that." *Id.* When asked if his answer would be

11    the same if those occasions could not scheduled ahead of time, the VE responded

12    that the result would be the same. *Id.*

    The ALJ based his analysis of Ms. Terry's residual functional capacity

13    concerning her neurogenic bladder around the limitation he posed to the VE

14    concerning proximity to a restroom: namely whether jobs were available that could

15    accommodate Ms. Terry being three to five minutes walking distance from a

16    restroom. *See* Tr. 26. There is no evidence in the record that discusses Ms. Terry's

17    neurogenic bladder as a proximity or urgency problem; it is instead always

18    discussed as a frequency and time-consuming one. In fact, the only mention of the

19    three to five minute window comes from the ALJ's own hypothetical to the VE. As

20    the ALJ's hypothetical was not supported by the record, it has no evidentiary

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 26

1    value. *See Gallant*, 753 F.2d at 1456. The ALJ framed his discussion of

2    Ms. Terry's neurogenic bladder around the idea that substantial gainful

3    employment is available so long as Ms. Terry could be within three to five minutes

4    of a restroom. As this analysis is based primarily on limitations without an

5    evidentiary basis in the record, the ALJ's finding is not supported by substantial

6    evidence.

7         Further, the ALJ failed to include various relevant limitations in his

8    hypothetical to the VE. While expressing doubt over Ms. Terry's claim that she

9    must self-catheterize every time she goes to the restroom, the ALJ did not mention

10   Ms. Terry's claims about the frequency with which she needs to urinate or the

11   amount of time it takes to self-catheterize in a public restroom. *See Reddick*, 157

12   F.3d at 722–23 ("In essence, the ALJ developed his evidentiary basis by not fully

13   accounting for the context of materials or all parts of the testimony and reports.").

14   This is especially relevant as the VE testified that, were Ms. Terry away from her

15   work station beyond scheduled breaks for as long as she claimed it took to self-

16   catheterize, she would not be able to find gainful employment. Tr. 96. While the

17   ALJ included some general statements about how some aspects of her testimony

18   make her claims regarding bladder issues less persuasive, Tr. 26–27, he failed to

19   make any findings specifically concerning the frequency of urination and how

20   much time it takes to self-catheterize. *See Orn,* 495 F.3d at 635 ("[T]o discredit a

21   claimant's testimony when a medical impairment has been established, the ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 27

must provide 'specific, cogent reasons for the disbelief.'") (internal citation

omitted).

When considering the record as a whole, this Court finds that the ALJ

analyzed Ms. Terry's neurogenic bladder impairment on a foundation which lacked

substantial evidentiary support in the record. His conclusion highlighting proximity

to a restroom, referenced neither by any medical expert nor by Ms. Terry in her

testimony, misses the pertinent issues concerning Ms. Terry's neurogenic bladder:

the frequency with which she must urinate and the amount of time it takes to self-

catheterize in a public restroom.

## IV.    Remand for Immediate Award of Benefits

Ms. Terry urges that, should this Court find any reversible error in the ALJ's

decision, the Court should remand for the immediate award of benefits. ECF

No. 13 at 23. Based on the credit-as-true rule, the Court agrees and will remand for

the calculation and award of benefits.

The ordinary remand rule applies to Social Security Cases. *Treichler v.*

*Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). As the Ninth

Circuit has noted

> If the reviewing court determines 'that the agency erred in some respect
> in reaching a decision to deny benefits,' and the error was not harmless,
> sentence four of § 405(g) authorizes the court to 'revers[e] the decision
> of the Commissioner of Social Security, with or without remanding the
> cause for a rehearing . . . [W]hen the record before the agency does not
> support the agency action, . . . the agency has not considered all relevant
> factors, or . . . the reviewing court simply cannot evaluate the

1  challenged agency action on the basis of the record before it, the proper
2  course, except in rare cases, is to remand to the agency for additional
   investigation or explanation.

3  *Id.* (internal citations omitted).

4      District courts have statutory authority "to reverse or modify an
5  administrative decision without remanding the case for further proceedings."
6  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The exercise of such
7  authority "was intended to be discretionary." *Id.* The Ninth Circuit applies a three-
8  step framework to "deduce whether this is one of the rare circumstances where we
9  may decide not to remand for further proceedings." *Treichler*, 775 F.3d at 1103.
10 This is referred to as the credit-as-true rule. *Garrison v. Colvin*, 759 F.3d 995, 1019
11 (9th Cir. 2014). Under the first step, the Court must determine whether "the ALJ
12 has failed to provide legally sufficient reasons for rejecting . . . claimant
13 testimony." *Treichler*, 775 F.3d at 1103 (internal citation omitted). The Court
14 concludes, for the reasons stated above, that the ALJ did not provide legally
15 sufficient reasons for rejecting Ms. Terry's disability claim concerning her
16 neurogenic bladder impairment.

17     Under the second step, the Court must "turn to the question [of] whether
18 further administrative proceedings would be useful." *Id.* At this stage, the Court
19 considers "whether the record as a whole is free from conflicts, ambiguities, or
20 gaps, whether all factual issues have been resolved, and whether claimant's
21 entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 29

1    Here, the only medical provider to opine on Ms. Terry's neurogenic bladder, Dr.

2    McNab, wrote that Ms. Terry's condition would deteriorate "only if she can't self-

3    catheterize with regularity" while working. Tr. 366 (emphasis in original). There

4    was no testimony or evidence that conflicted with Ms. Terry's statements

5    concerning how often she must urinate daily, the frequency of her urinary tract

6    infections, or the amount of time it takes to self-catheterize in a public restroom.

7    Finally, the VE testified that a person with the same bladder-related limitations as

8    Ms. Terry would be unable to find substantial gainful employment in the national

9    economy. Tr. 96. As there is no conflicting testimony concerning Ms. Terry's

10   neurogenic bladder impairment, the Court finds that further administrative

11   proceedings are unnecessary.

12        Under the third step, the Court must determine whether, "if the improperly

13   discredited evidence were credited as true, the ALJ would be required to find the

14   claimant disabled on remand." *Garrison*, 759 F.3d at 1020. When asked about an

15   individual with Ms. Terry's bladder limitations, the VE responded that the

16   individual "would have a difficult time sustaining ongoing gainful employment."

17   Tr. 96. Accordingly, the Court finds that, were the ALJ to credit Ms. Terry's

18   statements as true on remand, the ALJ would be required to find the claimant

19   disabled at step five in the sequential process.

20        The Court finds that Ms. Terry satisfies all three conditions of the credit-as-

21   true rule and that a careful review of the record discloses no reason to doubt that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 30

she is, in fact, disabled. Under Ninth Circuit precedent, a remand for the

calculation and award of benefits is both appropriate and required.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for summary judgment, **ECF No. 13**, is **GRANTED**.

2. Defendant's motion for summary judgment, **ECF No. 15**, is **DENIED**.

3. This case is **REMANDED** to the Commissioner for the immediate

    calculation and award of benefits.

4. **JUDGMENT** shall be entered for the Plaintiff.

The District Court Clerk is hereby directed to enter this Order, enter

judgment accordingly, provide copies to counsel, and to close this file.

**DATED** this 9th day of October 2015.


            *s/ Rosanna Malouf Peterson*
            ROSANNA MALOUF PETERSON
            Chief United States District Court Judge